**Laurie TOBIN, Appellant/Cross–Respondent,**

v.

**Thomas W. JERRY, et al, Respondents/Cross–Appellants.**

**Nos. ED 88255, ED 88257.**

Missouri Court of Appeals, Eastern District, Division One.

Nov. 27, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 16, 2008.

Application for Transfer Denied Feb. 19, 2008.

Gerard Thomas Noce, Foland, Wickens, Eisfelder, Roper & Hofer, St. Louis, MO, for Respondent/Cross Appellant.

Nelson Lewis Mitten, Jennifer Lynn Geschke, John Pawloski, St. Louis, MO, for Appellant.

Thomas W. Jerry, James R. Dankenbrink, Timothy R. Wolf, Dankenbrink Greiman, Osterhold & Hoffman, P.C., John L. Gianoulakis, St. Louis, MO, for Defendants.

### Introduction

KENNETH M. ROMINES, Judge.

This is a contract case involving a contingency fee agreement between a client and her law firm. Here, we consider whether the failure to produce a signed written agreement defeats an attorney-client contingent fee agreement. Ms. Tobin appeals from the judgment of the circuit court of the City of St. Louis, the Honorable Steven R. Ohmer presiding, which found in favor of Foland, Wickens, Eisfelder, Roper, & Hofer ("Foland Wickens") on their Motion to Enforce Attorneys Lien. Foland Wickens cross-appeals, arguing that it is entitled to a 40% fee, rather than the fee of 33 1/3% ordered by the trial court. The parties both move to dismiss. We deny the motions, and we affirm the judgment of the circuit court in part and reverse and remand in part. We are aided in our analysis by a long, detailed, and helpful set of findings of fact and conclusions of law by the circuit court.

### Factual and Procedural Background

Tobin retained Foland Wickens to represent her in a legal malpractice action against her former attorneys, Thomas Jerry, James R. Dankenbrink, Timothy R. Wolf, and Dankenbrink, Greiman, Osterholt & Hoffman, P.C. ("Defendants"), who represented her in a merger of her busi-

ness.[1] Tobin initially sought out the Suelthaus Walsh firm to represent her for the malpractice claim against Defendants, because Suelthaus Walsh had already filed a declaratory judgment action in the Circuit Court of St. Louis County seeking to render the merger documents void. However, Suelthaus Walsh was not willing to handle the malpractice claim on a contingent fee basis, and Tobin did not have the money to proceed otherwise. Thereafter, Tobin spoke with James Foland at Foland Wickens and he told her that the firm would be willing to represent her on a contingent fee basis. Foland then sent Tobin a written fee agreement, which laid out the terms of the contingency and the amount in fees Foland Wickens would collect upon recovery. The relevant portion of the agreement before us reads as follows:

> Attorneys shall have as compensation for representing Client a fee contingent, upon Attorneys obtaining a recovery for Client by compromise or settlement, a sum equal to Thirty–Three and One–Third (33 1/3%) percent of the net recovery. If the case is not resolved twenty-one (21) days before trial, the contingent fee will be a sum equal to forty (40%) percent of the net recovery. Net recovery is that sum of money which remains after all sums advanced by Attorneys on Client's behalf in connection with the prosecution of Client' [sic] claim have been subtracted from all sums recovered for and on behalf of Client by said Attorneys as compensation for Client's loss or damages.

On 31 August 2000, Tobin sent an email to Foland raising some concerns about the agreement. None of Tobin's concerns specifically touched upon the quoted language above. Foland and Tobin discussed her concerns and they resolved them without making any changes to the written agreement. Ultimately, neither party was able to produce a signed copy.

Tobin's case proceeded, and on 16 May 2002, Foland Wickens filed suit against Defendants on behalf of Tobin. Foland Wickens conducted extensive discovery, including handling at least 24 depositions, gathering evidence, retaining expert witnesses, and organizing an extensive client file. The case was set for trial on 28 March 2005. However, the parties agreed to participate in mediation, which took place on 14 March 2005. At this mediation, Defendants offered to settle the case for $2.75 million. After discussing the offer with Foland, Tobin voluntarily signed the settlement agreement.

Shortly after the settlement agreement was signed, Tobin became concerned about her potential tax liability. She consulted Michael Prost, a CPA, for tax advice. She asked Foland Wickens to retain Prost as a tax advisor, and Foland Wickens paid him $21,000 for tax advice as part of the expenses in the case. Tobin subsequently asked Foland Wickens to set aside the settlement agreement because she felt her net recovery would be too low. Foland Wickens declined. On 6 May 2005, Foland Wickens sent a letter to Tobin asserting its statutory lien pursuant to § 484.130 RSMo. (2000). The lien was in the amount

---

1. Tobin's company, Electrografix, engaged in the business of developing internet products based on intellectual property created by Tobin. Tobin had originally hired Defendants to assist her in finding investors for Electrografix. When the possibility of a merger with Across Media Networks, Inc. (AMN), arose, Tobin retained Defendants to protect her in-terest in her intellectual property. Tobin claimed that Defendants mishandled the merger and failed to properly protect her interest and induced her to sign merger documents which were contrary to her interests while she was under the influence of medication post-surgery.

of Foland Wickens's expenses plus 40% of the remaining proceeds. On 21 August 2005, Tobin terminated Foland Wickens's representation.

The Defendants in the underlying malpractice case filed a motion to enforce the settlement on or about 27 September 2005, which the court granted after a hearing. Defendants then paid the settlement proceeds into the registry of the court, per the trial court's order. Foland Wickens joined the motion to enforce, and also filed a motion to enforce its attorneys lien. The hearing on Foland Wickens's motion took place over several days. Tobin testified that she did not recall the term of the fee agreement which raised the amount of the fee to 40% if the case was resolved within 21 days of the trial setting. She testified that she always assumed the fee was 1/3 in any event. Foland testified that he had gone through the agreement with her, that she had never raised concerns about the fee when she had raised other concerns, and that she had eventually signed a copy. However, as noted, neither of the parties was able to find a signed copy. On 3 March 2006, the trial court issued its findings of fact and conclusions of law.

The trial court found that "[t]he contract governing the representation by [the] Firm of Tobin was a contingent fee contract in writing." The court found it troubling that a signed agreement could not be produced, but found "sufficient indicia of an agreement from all the facts and circumstances." The court found all terms contained in the writing to represent the parties' agreement, except the term increasing the fee to 40% within 21 days of trial. The trial court also found that Tobin had raised concerns about the agreement, and thus said it would "construe these terms against the Law Firm and find that the contingent fee contract between the parties calls for a 1/3 fee upon recovery."

The court found that Foland Wickens had met both the contingencies laid out in the agreement, by achieving the settlement and by doing so within 21 days of trial. The court also found that Foland Wickens incurred reasonable expenses in the amount of $200,698.45.

Tobin raises four points on appeal. First, she argues that the trial court erred in finding the existence of a valid and enforceable contingency fee agreement. Her second point is that even if there was an agreement, Foland Wickens did not meet the contingency. Next, she argues that to award the contingency fee of 1/3 was error based on disparities that percentage would create in the net recoveries of each party. Finally, she argues that the award of expenses was error because the amount was unsupported by the record. Foland Wickens cross-appeals on one point only, arguing that it was entitled to a 40% fee as dictated by the written agreement. While the appeals were pending, Tobin withdrew from the court registry an amount equal to 60% of the settlement proceeds after the deduction of expenses. Foland Wickens withdrew an amount equal to 33 1/3% of the settlement proceeds after the deduction of expenses. Both parties filed motions to dismiss, arguing that the other had taken the benefits of the judgment by withdrawing the money, and thus had waived their respective appeals. We deny both motions and proceed to the merits of the appeals.

### Standard of Review

Our review is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

## Discussion

### Validity of Contingent Fee Agreement

 Tobin's first point is that the trial court erred in finding the existence of a valid and enforceable contingent fee agreement. She bases her argument on Missouri Rule of Professional Conduct 4–1.5(c), which states:

A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Tobin argues that because Foland Wickens could not produce a signed agreement, it did not comply with this rule. However, the rule does not expressly require a signature.[2] Furthermore, this Court has held that "[a] signature is not required in order to show mutuality or assent to the terms of a writing. Assent can be shown in other ways, such as by the parties' conduct." *Heritage Roofing, LLC v. Fischer*, 164 S.W.3d 128, 134 (Mo.Ct.App.E.D.2005). *See also Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 518 (Mo. banc 1988). The fact that this is a contract for attorneys' fees does not change the analysis. *See Kramer v. Fallert*, 628 S.W.2d 671, 674 (Mo.Ct.App.E.D.1981) (contract for attorneys' fees should be construed under the same rules of construction that apply to any other contract).

Here the record is crystal clear there was a signed agreement. The trial court further found that by accepting the representation, which both Tobin and Foland Wickens knew must be done on a contingency basis if at all, Tobin's actions additionally manifested assent. We find no error in the trial court's holding that there was a valid and enforceable contingent fee agreement between Tobin and Foland Wickens. Tobin's first point is denied.

### Contingent Fee Amount

The question then becomes what the terms of the agreement were. The trial court found, as stated above, that the parties had manifested assent to the written agreement. However, the court went on to find that because Tobin "had questions and concerns about the contract itself," the court would "construe these terms against the Law Firm and find that the contingent fee contract between the parties calls for a 1/3 fee upon recovery." These two conclusions are in contradiction of one another and of the agreement, thus we find that the trial court misapplied the law in this respect.

Because Rule 4–1.5(c) requires a contingent fee contract to be in writing, the trial court had one of two options: 1) enforce the written contract between the parties, construing it under established contract law; or 2) find that no contract exists and grant the attorneys recovery in *quantum meruit*, assuming the attorneys properly plead and proved a basis for *quantum meruit* recovery.[3] The trial court did find

---

**2.** This rule has since been amended to require a signature. *See* Rule 4–1.5(c) (revised July 1, 2007).

**3.** Tobin argues that the Firm waived its *quantum meruit* claim. Because we find the contract to be valid, we express no opinion on whether the Firm did in fact waive *quantum meruit* recovery; however, the conclusion To-

bin desires us to reach—first, that there was no contract, and second, that the Firm may not recover in *quantum meruit*—is incredible. Tobin has sued the Firm for malpractice in negotiating the settlement as well. Therefore, Tobin's desired result is that the Firm's reward for five years of litigation filling twenty-five bankers' boxes and the recovery of a

the existence of a written contract which conformed to Rule 4-1.5, and as stated previously, the trial court did not err in so finding. Therefore, the court's next task was to enforce the terms of that writing under contract law. *See Kramer v. Fallert*, 628 S.W.2d 671, 674 (Mo.Ct.App.E.D. 1981) (contract for attorneys fees should be construed under the same rules of construction that apply to any other contract).

■ When contract terms are clear and unambiguous, the court does not look beyond those terms in construing the contract. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428–29 (Mo. 2003). The only time a contract term is to be construed against the drafter is when it is ambiguous. *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo.Ct.App.E.D.1991). The court may not use extrinsic evidence to create an ambiguity where none exists. *Dunn*, 112 S.W.3d at 429; *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo.1979). Here, the trial court construed the compensation term against Foland Wickens because Ms. Tobin claimed she did not remember it and because Tobin had expressed concerns about terms of the writing in the past.[4] However, a plain reading of the terms surrounding Foland Wickens's compensation convinces us that they are unambiguous. Because the parties assented to the writing and its terms are unambiguous, the trial court should have enforced the terms as written.

Therefore, we reverse that portion of the trial court's findings, and hold that the contract between the parties calls for a contingent fee of 40% if Foland Wickens met the second contingency—recovery within 21 days of trial. Foland Wickens's point on appeal is granted.

### Contingency Met

■ Tobin's second point is that even if there is an enforceable contingent fee agreement, Foland Wickens did not meet the contingency and thus is not entitled to recovery under the contract. The contract states that Foland Wickens's fee will be contingent "upon Attorneys obtaining a recovery for Client by compromise or settlement." The trial court found that Foland Wickens "obtained for Tobin the recovery of a settlement upon which the contingency was based. Law Firm satisfied all terms and conditions of the contingent fee agreement." The court further found that Tobin voluntarily agreed to the settlement and voluntarily signed the settlement agreement.

Tobin relies primarily on the case of *Goldstein and Price, L.C. v. Tonkin & Mondl, L.C.*, 974 S.W.2d 543 (Mo.Ct.App. E.D.1998). In that case, this Court concluded that the attorneys only satisfied the contingency when the client actually received money. However, that case is distinguishable because the language of the contract there was different: it used the terms "monies recovered by judgment or settlement." *Id.* at 548. This Court said

substantial fee is the denial of their fee, and a malpractice judgment!

4. Although we are deciding this point on legal grounds, we also note here that even if it had been permissible for the trial court to use Tobin's expressed concerns to find that the term should be construed against the Firm, the conclusion the trial court reached is inconsistent with the facts here. Her email of 31 August 2001 expressed no concern over

the fee amount, nor did she raise it at all until the Firm asserted its lien. She testified at the hearing that she believed the writing to be accurate; she simply did not remember that part of it. Therefore, although the court attempted to protect Tobin from having terms enforced against her that she had objected to in the beginning of her relationship with the Firm, the court did not succeed here because she did not object to this particular term.

"[h]ad the contract required only 'recovery of judgment or settlement,' ... [the firm] may have satisfied the contingency." *Id.* Here, Foland Wickens achieved the settlement before Tobin terminated the firm's representation of her, and did so within 21 days of trial. Thus, we find substantial evidence in the record to support the trial court's finding that Foland Wickens met both contingencies.

Nor does *Goldstein's* statement that "judgment must be obtained and collected" require us to reverse. *See id.* That statement related to the principle that an attorney undertaking a case on a contingent fee basis is committed to seeing it through to the end, absent language in the contract to the contrary. *Id.* Here, there was no possibility of appeal from the settlement agreement, and the trial court found that Defendants were ready, willing, and able to pay the settlement amount. The only thing stopping collection of that settlement was Tobin's own action in requesting to have it set aside. Therefore, we find that the trial court did not err in finding that Foland Wickens met all the conditions of the contingent fee agreement. Tobin's second point is denied.

### Reasonableness of Fee

■ Tobin's third argument is that the fee, whether 1/3 or 40%, was unreasonable. She argues this is because the result was a net recovery to her that was significantly less than that to Foland Wickens, which was not contemplated by the agreement.[5] Although the trial court did not consider the reasonableness of a 40% fee, it did make a finding that the 1/3 fee was reasonable. Furthermore, we ourselves are experts on the subject of attorneys fees, *see Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 326 (Mo.1979) (applying factors and making reasonableness determination), and there was substantial evidence adduced at the hearing to aid us in this question.

The factors to determine the reasonableness of a fee are laid out in Rule 4–1.5(a) of the Missouri Rules of Professional Conduct. *See also, Whalen, Murphy, Reid, Danis, Garvin & Tobben v. Estate of Roberts,* 711 S.W.2d 587, 589 (Mo.Ct.App.E.D. 1986). The net recovery vis-à-vis each party is not controlling; and even if it were, the record lacks sufficient evidence as to what Foland Wickens's net recovery would be after taxes (see note 5). Taking into account the trial court's analysis of the factors, we hold that the evidence supports a conclusion that the 40% fee compelled by the agreement is reasonable. Point denied.

### Reasonableness of Expenses

■ Tobin argues that the award of expenses to Foland Wickens was unreasonable because it included several expenses for unrelated matters.[6] Foland Wickens argues that the expenses associated with that work were all related to this case because the work performed helped establish the evidence for legal malpractice on the part of Defendants. The trial court awarded an amount less than that original-

---

5. Tobin bases her argument on several different scenarios as to the eventual tax liability she will incur. Her analysis of course does not take into account the Firm's tax consequences, and as such her conclusions are a *non sequitur.*

6. Foland Wickens had also undertaken representation of Tobin in her declaratory judg-

ment action (which had previously been handled by Defendants) and in AMN's bankruptcy proceedings in Colorado. Tobin argues that some of the expenses claimed here were actually expended in pursuit of the declaratory judgment or the bankruptcy proceedings, and not for the malpractice case.

ly requested by Foland Wickens, and the court concluded that amount was reasonable and necessary. We see no error in the court's findings on this point. Point denied.

### Conclusion

There was a valid and enforceable contingency fee agreement between Tobin and Foland Wickens, the terms of which were contained in a writing. The terms were unambiguous, and thus must be enforced as written. A fee of 40% is not unreasonable based on the facts and circumstances of this case, and thus we remand to the trial court to enter a fee award of 40%. The trial court did not err in its award of expenses to Foland Wickens.

CROSS–MOTIONS TO DISMISS DENIED.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.